Argued and submitted September 14, 2021; resubmitted January 25, decision of Court of Appeals affirmed, case remanded to circuit court for further proceedings March 31, 2022

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DENNIS JAMES DAVIDSON,
*Respondent on Review.*

(CC 11C43121) (CA A165303) (SC S068231)

507 P3d 246

Defendant was sentenced to life in prison without the possibility of parole under ORS 137.719 on his convictions for public indecency. The Oregon Supreme Court held that that sentence was unconstitutionally disproportionate as applied to his offenses. On remand, the trial court sentenced defendant to a total of 180 months in prison and lifetime post-prison supervision. The Court of Appeals reversed, holding that the trial court was required to impose a sentence in conformity with Oregon's felony sentencing guidelines and that the sentence that the trial court imposed did not do so. *Held*: In permitting the trial court to impose a departure from the sentence of life without the possibility of parole that is "authorized by the rules of the Oregon Criminal Justice Commission," ORS 137.719(2) requires the trial court to impose a sentence using the felony sentencing guidelines grid block as a starting point for the sentence and departing from there based on findings of substantial and compelling reasons, as permitted under the felony sentencing guidelines rules.

The decision of the Court of Appeals is affirmed. The case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Michael A. Casper, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ernest G. Lannet, Chief Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for respondent on review.

_____

* On appeal from Marion County Circuit Court, Susan M. Tripp, Judge. 307 Or App 478, 478 P3d 570 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

NELSON, J.

The decision of the Court of Appeals is affirmed. The case is remanded to the circuit court for further proceedings.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**NELSON, J.**

In this case, defendant was sentenced to life without the possibility of parole under ORS 137.719 on his convictions for public indecency, a Class C felony, because he had been sentenced for felony sex crimes at least twice before sentencing for the current crimes. This court held that that sentence was unconstitutionally disproportionate as applied to defendant's offenses, and it remanded the case to the trial court for resentencing. The trial court concluded on remand that it was permitted to sentence defendant to any term of imprisonment short of life imprisonment without the possibility of parole. The Court of Appeals reversed, holding that, under ORS 137.719, in the circumstances, the trial court was required to impose a departure sentence in conformity with Oregon's felony sentencing guidelines. We allowed the state's petition for review, and, for the reasons discussed below, we affirm the decision of the Court of Appeals.

## BACKGROUND

The facts relevant to our resolution of the legal issue before us are brief. Defendant was convicted of two felony counts of public indecency under ORS 163.465 for exposing himself in a public park.[1] Because defendant had two prior felony convictions for public indecency and because the original sentencing court found no ground for a downward departure, defendant was sentenced to consecutive life sentences without the possibility of parole under ORS 137.719. That statute provides, in relevant part:

"(1)   The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

"(2)   The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons."

---

[1] Under ORS 163.465(2), public indecency is a Class A misdemeanor unless, as here, the person has a prior conviction for public indecency, in which case it is a Class C felony.

On review, this court concluded that a sentence of life without the possibility of parole was unconstitutionally disproportionate as applied to defendant's offenses, because defendant's criminal history included no offense more serious than public indecency and that history included no other conduct demonstrating that defendant posed a "significant physical danger to society." *State v. Davidson*, 360 Or 370, 391, 380 P3d 963 (2016) (*Davidson I*). The court vacated the sentence of life without the possibility of parole and remanded the case to the trial court for resentencing.

On remand, the trial court held hearings to determine defendant's new sentence in light of *Davidson I*. Before the trial court, defendant argued that the court lacked authority to sentence him under ORS 137.719(1), and, because the original sentencing court had found no basis for departure under ORS 137.719(2), the court on remand also was precluded from sentencing him under that provision. According to defendant, that meant that the court was required to sentence him under the sentencing guidelines. The state, for its part, argued that, although this court in *Davidson I* had held that a life sentence for defendant's crimes was unconstitutional, it did not otherwise limit the sentence that the court could impose, and neither this court's decision in *Davidson I* nor the statute required the court to impose a guidelines sentence. The state argued that the trial court was authorized to and should impose a significant term of imprisonment short of life.

The trial court essentially agreed with the state, concluding that ORS 137.719(1) did not apply to defendant's case and that ORS 137.719(2) did not require it to impose a guidelines sentence. The court reasoned that this court's determination in *Davidson I* that the presumptive life sentence was unconstitutional as applied to defendant was a "substantial and compelling" reason "to impose a sentence other than the presumptive sentence" under ORS 137.719(2). It adopted the findings of the original sentencing court: namely, that defendant was persistently involved in the same type of offense, that defendant's crimes involved multiple victims, that defendant was on supervision at the time of the crimes, that defendant's prior incarceration had not deterred his criminal activity, and that incarceration

was necessary for the public safety. Further, it observed that a lengthy sentence was necessary to protect the public. Based on those factors, the court resentenced defendant to 90 months' incarceration on each count, to be served consecutively—for a total term of imprisonment of 180 months—and to be followed by a lifetime term of post-prison supervision.

Defendant appealed to the Court of Appeals, challenging those sentences and arguing that the sentencing court lacked authority to impose a sentence of 180 months' incarceration followed by lifetime post-prison supervision, but pursuing a slightly different line of reasoning. Defendant argued that ORS 137.719(1) authorizes only one sentence—a presumptive life sentence—which this court held was unconstitutional as applied to him; it does not authorize a sentence of 180 months of incarceration and lifetime post-prison supervision. Therefore, he argued, he was required to be sentenced under ORS 137.719(2), which, in his view, did not authorize the sentence that the trial court imposed and, instead, required the court to apply the sentencing guidelines rules, which would cap his sentence at 108 months and which would not permit lifetime post-prison supervision. The state responded that both subsections of ORS 137.719 authorized the trial court to impose the sentence that it did.

The Court of Appeals reversed. *State v. Davidson*, 307 Or App 478, 478 P3d 570 (2020) (*Davidson II*). The court observed that the trial court had imposed defendant's sentence under subsection (2), and, therefore, the court began by considering the text and context of ORS 137.719(2). In particular, the court examined the meaning of the phrase "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons." Based on its reading of the text and context of that provision, the court stated that it understood the "rules of the Oregon Criminal Justice Commission" to include the felony sentencing guidelines set out in chapter 213 of the Oregon Administrative Rules, which establish presumptive sentences that a court must generally impose, based on the defendant's criminal history and the gravity of the offense, and permit the court to depart from the presumptive sentence if it finds "substantial

and compelling reasons" to do so. *Davidson II*, 307 Or App at 485-88. From there, the court concluded that subsection (2) authorizes the sentencing court to impose a departure sentence that conforms to the sentencing guidelines, and that the sentencing guidelines permit neither defendant's sentence of 180-months' incarceration nor the imposition of lifetime post-prison supervision in this case. *Id*. at 496.

## ANALYSIS

On review, the state reprises its arguments that the sentence that the trial court imposed was authorized under both ORS 137.719(1) and ORS 137.719(2). Before we begin our consideration of the issues presented, a brief review of the relevant statutes and regulations is helpful.

A sentence must be authorized by the governing statute under which it is imposed. *State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975) ("A sentence must be in conformity with the governing statute; any nonconforming sentence is void for lack of authority and thus totally without legal effect."). When a court imposes a sentence that is not in conformity with the governing statute, "'it infringes upon the power of the legislature to determine the manner of punishment.'" *State v. Speedis*, 350 Or 424, 431, 256 P3d 1061 (2011) (quoting *Leathers*, 271 Or at 240).

As discussed, defendant initially was sentenced under ORS 137.719(1), which makes the presumptive sentence for his crimes life in prison without the possibility of parole. Subsection (2) permits the court to impose a sentence other than the presumptive sentence "if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons." The parties dispute precisely which rules the phrase "the rules of the Oregon Criminal Justice Commission" refers to, but, in general, the parties agree that the commission's rules are commonly known as the felony sentencing guidelines.[2]

---

[2] As the court explained in *Speedis*, the legislature created the Oregon Criminal Justice Commission to develop recommendations for providing greater uniformity in sentencing. 350 Or at 427. In 1989, the commission promulgated rules—sentencing guidelines—as administrative rules, which set presumptive sentences for crimes based on their general seriousness and on the offender's

The felony sentencing guidelines establish "grid blocks" that prescribe a range of presumptive sentences for virtually all crimes, depending on the seriousness of the crime and the offender's criminal history, and they provide other requirements for and limitations on sentences and terms of post-prison supervision. The guidelines apply to felony offenses, and they determine the sentence for any offense not otherwise provided for by a statute that calls for a longer sentence. ORS 137.669 ("The guidelines *** shall control the sentences for all crimes committed after the effective date of such guidelines.); ORS 137.637 ("When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by the rules of the Oregon Criminal Justice Commission, whichever is longer."); OAR 213-009-0001(1) ("If a mandatory prison sentence is required or authorized by statute, the sentence imposed shall be that determinate sentence or the sentence under these rules[,] whichever is longer.").

The state makes three principal arguments. The first two are related: It argues that ORS 137.719(2) does not mandate that a trial court that is permitted, or, as in this case, required to depart from the presumptive life sentence must impose a grid block sentence subject to OAR 213-008-0003(2) (setting limit on duration of upward departure sentence), and it argues that, in any case, the upward departure maximums set out in OAR 213-008-0003(2) do not limit downward departures under ORS 137.719(2). The state's third argument is that, in fact, the sentence that the trial court imposed was authorized under ORS 137.719(1) and the Oregon Constitution. We take the third argument first, as we can easily dispose of it.

The state argues that it is undisputed that the trial court had statutory authority to impose a sentence of life without the possibility of parole; this court reversed his sentence because it was unconstitutional as applied to him,

criminal history. *Id*. The sentencing guidelines and rules and any amendments thereto are required to be submitted to the legislature for its approval. ORS 137.667(2). The legislature approved the guidelines in 1989, codifying them and giving them the force of statutory law. Or Laws 1989, ch 790, § 87; *State v. Ferman-Velasco*, 333 Or 422, 430, 41 P3d 404 (2002) (so explaining).

and not because the statute itself was unlawful or void. The state argues that, in that limited circumstance—where ORS 137.719(1) authorizes a sentence of life without the possibility of parole but the constitution does not permit its imposition—ORS 137.719(1) permits the trial court to impose any sentence short of life that is constitutionally permissible. According to the state, ORS 137.719(1) makes life without the possibility of parole the *presumptive* sentence, which, by its very nature, may be raised or lowered depending on the existence of aggravating and mitigating factors.

The state contends that ORS 137.719(2) identifies one particular circumstance that permits the court to deviate from the presumptive sentence, namely, the presence of aggravating or mitigating factors, but nothing in the statute suggests that subsection (2) provides the *only* permissible basis for departing. Here, the state argues, the trial court found no mitigating factors militating in favor of a downward departure; rather, the reason for the departure was that the presumptive sentence is unconstitutional as applied. Therefore, the state argues, the trial court was permitted to impose any sentence short of life that the constitution permits.

The state's conclusion does not follow from its premise. ORS 137.719(1) provides for only one sentence—the presumptive sentence of life without the possibility of parole. ORS 137.719(2) provides a mechanism for imposing a sentence other than the presumptive sentence when the court finds substantial and compelling reasons to do so. Nothing in either subsection (1) or (2) suggests that the unconstitutionality of a presumptive life sentence in the case of a particular defendant is not a "substantial and compelling reason" to depart, as that phrase is used in subsection (2), and we agree with the trial court that it is.[3] Moreover, nothing in either subsection suggests that the legislature intended to authorize the trial court to deviate from the presumptive sentence without using the mechanism provided in subsection (2) when the reason for departure is the unconstitutionality of the presumptive sentence in a particular case. The

_____

[3] Indeed, the list of aggravating and mitigating departure factors set out in OAR 213-008-0002 is expressly "nonexclusive." OAR 213-008-0002(1).

state notes that the authority to impose a shorter sentence if the constitution requires inheres in the concept of "presumptive sentence." We agree, but the statute clearly provides the mechanism for doing so in ORS 137.719(2). There is simply no support for the argument that ORS 137.719(1), and not ORS 137.719(2), applies in this situation.

We turn to the state's other arguments, which both revolve around the proper interpretation of ORS 137.719(2), which permits a sentence other than the presumptive sentence. As is our practice, in interpreting state statutes, we use the familiar methodology set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) to determine the legislature's intent. We examine the text and context of the statute, giving weight to any proffered legislative history as appropriate. *Id*. If the legislature's intent still remains unclear, we then turn to cannons of construction. *Id*. For convenience, we repeat the text of ORS 137.719(2):

> "The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons."

At the outset we observe that neither the term "presumptive sentence" nor the term "departure" is defined in the statutes. The guidelines rules define the term "presumptive sentence," as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history or a sentence designated as a presumptive sentence by statute." OAR 213-003-0001(16). The term "presumptive sentence" in ORS 137.719(2) expressly refers to the sentence of life without the possibility of parole provided in ORS 137.719(1). Thus, today, the statutory presumptive sentence of life without the possibility of parole also is a "presumptive sentence" for purposes of the guidelines rules. However, in 2001, when ORS 137.719 was enacted, the definition of "presumptive sentence" in the guidelines rules did not refer to the statutory presumptive sentence set out in ORS 137.719. OAR 213-003-0001(16) (2001) provided:

"'Presumptive sentence' means the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history or the sentence otherwise established in ORS 137.717."

In 2001, the felony sentencing guidelines defined (and continue to define today) a "departure" sentence simply as "a sentence *** which is inconsistent with the presumptive sentence for an offender." OAR 213-003-0001(5). Therefore, in 2001, the definition of "departure" in the rules referred only to departures from grid block presumptive sentences and statutory presumptive sentences under ORS 137.717.

As noted, ORS 137.719(2) permits the court to impose "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons." We agree with the state that, given that, under the guidelines rules at the time that the statute was enacted, the definition of "departure" in the rules referred only to departures from grid block presumptive sentences, the legislature had to have intended that the "departure" permitted in subsection (2) was a departure from the presumptive sentence established in subsection (1), and not a departure from the grid block sentence under the guidelines.

In other words, at the time ORS 137.719 was enacted, the terms "presumptive sentence" and "departure" as used in the ORS 137.719 had different meanings than the identical terms as used in the felony sentencing guidelines rules. That difference factors strongly in our understanding of the legislature's intent in enacting ORS 137.719(2).

Any departure sentence imposed under ORS 137.719(2) must be "authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons." We already have stated that we agree with the trial court that this court's conclusion that the presumptive sentence is unconstitutional as applied to defendant's crimes is a substantial and compelling reason to impose a departure sentence. Therefore, we are left to determine what is meant by the phrase, "departure

sentence authorized by the rules of the Oregon Criminal Justice Commission."

We agree with the Court of Appeals that, by its plain wording, that phrase provides that, to be valid, a departure sentence must conform to the requirements of the "rules of the Oregon Criminal Justice Commission." *Davidson II*, 307 Or App at 485. As we have noted, the parties agree that that phrase refers to the felony sentencing guidelines.

Nothing in ORS 137.719(2) expressly suggests that some, but not all, of the felony sentencing guidelines rules apply to a sentence under that subsection. In addition to establishing presumptive sentences, the guidelines permit a court to depart from the presumptive sentence if it finds substantial and compelling reasons to do so. OAR 213-008-0001. The departure rules contemplate both upward and downward departures, OAR 213-008-0002 (setting out both aggravating and mitigating factors), and they place limits on the maximum sentences that may be imposed as upward departures from the presumptive sentence. OAR 213-008-0003(2) provides that

> "[a] durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605."

ORS 161.605, in turn, provides that the maximum term of incarceration for Class C felonies, like defendant's convictions for public indecency, is five years.

Moreover, those rules govern the imposition of terms of post-prison supervision. In general, the duration of post-prison supervision is determined by the crime seriousness category of the most serious crime of conviction. OAR 213-005-0002(2). Departures on the duration of post-prison supervision are not allowed. OAR 213-005-0002(1).

In requiring a departure sentence to be "authorized by the rules of the Oregon Criminal Justice Commission," then, the plain text of ORS 137.719(2) suggests that any sentence imposed under subsection (2) must conform to *all* the felony sentencing guidelines rules, including those

that establish a grid block sentence and those that place maximum limits on sentences and post-prison supervision imposed under the guidelines.

The state acknowledges that that is a plausible interpretation of the statute, but it argues that there is another plausible interpretation. The state asserts that the words "departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon substantial and compelling reasons" more likely means only that the departure must be authorized by the rules of the Oregon Criminal Justice Commission that require findings of substantial and compelling reasons. And, the state asserts, there are only two such felony sentencing guidelines rules: ORS 213-008-0001, which requires imposition of the presumptive sentence "unless the judge finds substantial and compelling reasons to impose a departure," and OAR 213-008-0002, which provides a "nonexclusive list of mitigating and aggravating factors [that] may be considered in determining whether substantial and compelling reasons for a departure exist." Thus, the state explains, in providing for a "departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon substantial and compelling reasons," the legislature intended to permit a trial court to impose any sentence short of life without the possibility of parole, so long as it complies with those two rules and finds substantial and compelling reasons for the departure.

The state contends that that interpretation makes sense, because, under the guidelines, a court must impose the presumptive sentence—in this case, life without the possibility of parole—unless it finds substantial and compelling reasons to depart. Therefore, according to the state, making such findings is "the fundamental prerequisite" for imposing a departure sentence, and the phrase "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons" can plausibly be read to require only that a downward departure adhere to the "core guidelines rules" that the departure be supported by substantial and compelling reasons. Under that interpretation, the state asserts, the statute does not require compliance with any of

the felony sentencing guidelines rules limiting the duration of a sentence, so long as the court makes findings on the record of substantial and compelling reasons for the sentence imposed.

The state's interpretation does not bear scrutiny. For convenience, we repeat subsection (2) here:

> "The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons."

ORS 137.719(2). The phrase "departure sentence," in context, is a reference to the antecedent phrase, "a sentence other than the presumptive sentence." In that light, the phrase, "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission" can best be understood as providing simply that a sentence other than the presumptive sentence must conform, generally, to "the rules." Rather than providing that only the two felony sentencing guidelines rules pertaining to findings of substantial and compelling reasons apply to departures under that subsection, the passage is better understood to suggests that the sentence itself must conform generally to "the rules of the Oregon Criminal Justice Commission." And, indeed, the legislature easily could have referenced the two rules the state points to, or expressly stated that any departure sentence is permissible so long as the court finds substantial and compelling reasons to depart, if that is what it had intended.

And finally, although we can agree that findings of substantial and compelling reasons to depart are, in the state's words, a "fundamental prerequisite" for a departure, the fact that such findings are essential to the decision to depart does not suggest that none of the other "rules of the Oregon Criminal Justice Commission" applies once the court has made those findings. Indeed, the very use of the phrase "authorized by the rules" suggests the contrary. "Authorize" means, among other things, to "permit by or as if by some recognized or proper authority." *Webster's Third New Int'l Dictionary* 146 (unabridged ed 2002). That suggests that any sentence other than the presumptive sentence of life

without the possibility of parole must be permitted by the felony sentencing guidelines rules—all of them and not just some of them.

Nonetheless, the state asserts that context supports its interpretation. Specifically, the state points to two statutes, ORS 137.717 and ORS 137.712, in support of its position. As we will explain, neither statute assists the state.

ORS 137.717 provides for increased presumptive sentences for certain repeat property offenders. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). ORS 137.717 was enacted a few years before the legislature enacted ORS 137.719, and, like ORS 137.719, it provides for a presumptive sentence for certain repeat offenses but gives the trial court discretion to impose "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons." Subsections (1) through (3) set forth the presumptive sentences for various property crimes. Subsection (4) provides:

> "The court may impose a sentence other than the sentence provided by subsection (1) or (3) of this section if the court imposes:

> "(a)  A longer term of incarceration that is otherwise required or authorized by law; or

> "(b)  A departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons. Unless the law or the rules of the Oregon Criminal Justice Commission allow for imposition of a longer sentence, the maximum departure allowed for a person sentenced under this subsection is double the presumptive sentence provided in subsection (1) or (3) of this section."

ORS 137.717(4).[4]

The state argues that, importantly, ORS 137.717(4) specifies an upper limit on any departure sentence—namely,

---

[4] ORS 137.717 has been amended since its enactment, which we explain below, but the operative wording in subsection (4)—"departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons"—is the same as that in place in 2001, when the legislature enacted ORS 137.719. ORS 137.717(3)(b) (2001).

double the statutory presumptive sentence. It follows, according to the state, that ORS 137.717 provides for a departure *from* a statutory presumptive sentence and not a departure *to* a guidelines sentence. In other words, the state contends, the inclusion of that wording—permitting in some circumstances a sentence that deviates from the guidelines—demonstrates that the legislature did not intend the phrase, "departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons," to refer to a departure from the statutory presumptive sentence to "an ordinary guidelines sentence." The state asserts that, instead, the legislature understood the phrase to refer to any departure from the statutory presumptive sentence that is justified by substantial and compelling reasons.

The state notes that ORS 137.719 does not contain a similar maximum limit on departure sentences, but, it explains, such a limit is unnecessary in the context of ORS 137.719, because the presumptive sentence for repeated sexual offenses is life without the possibility of parole; only a downward departure is available. Nonetheless, according to the state, in using the identical wording in ORS 137.719(2) as is used in ORS 137.717(4), it can be assumed that the legislature meant the same thing, and that, the state contends, is that both statutes permit any sentence that is justified by substantial and compelling reasons and that neither statute requires a departure to a guidelines sentence.

Again, the state's conclusion does not follow from its premise. First, a "departure from a presumptive sentence" under ORS 137.717 is not inherently incompatible with a "departure to an ordinary guidelines sentence." ORS 137.717(4) permits departures from the statutory presumptive sentence and, in requiring that those departure sentences be "authorized by the rules of the Oregon Criminal Justice Commission," as we have said, the statute can be read as generally requiring that any departure sentence conform to the guidelines rules. Neither the fact that ORS 137.717(4) imposes an upper limit on departure sentences that references the statute and not the guidelines, nor anything else in that subsection or in ORS 137.717, suggests in any way that only the guidelines rules requiring the court

to find substantial and compelling reasons to depart apply to the determination of an appropriate departure sentence.

Indeed, in focusing on the statute's express upper limit on departure sentences, the state ignores that the legislature amended ORS 137.717 to clarify that, in providing for a "departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons," it intended to permit downward departures, presumably to a grid block sentence if that was appropriate. The legislature viewed that clarification as necessary after the 1999 Court of Appeals decision in *State v. Bagley*, 158 Or App 589, 976 P2d 75 (1999).

In *Bagley*, the defendant had been convicted of unauthorized use of a vehicle and was subject to a 13-month prison sentence under ORS 137.717(1)(b) (1997), due to his prior convictions. That statute provided that "the court shall sentence the person to a term of at least 13 months of incarceration" if the person had a certain criminal history. The sentencing court imposed an 18-month sentence under ORS 137.717(3)(b) (1997) after finding the existence of one aggravating factor. ORS 137.717(3) (1997) provided:

> "The court may impose a sentence other than the sentence provided by subsection (1) of this section if the court imposes:
>
> "(a)  A longer term of incarceration that is otherwise required or authorized by law; or
>
> "(b)  A departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons."

In imposing the defendant's sentences, the trial court interpreted that statute in the same way that the state advocates today: that is, the trial court concluded that it was not required to consult the felony sentencing guidelines in departing from the statutory presumptive sentence and that it could impose any constitutional sentence longer than the presumptive guidelines sentence.

The defendant appealed, arguing that "a departure sentence authorized by the rules of the Oregon Criminal Justice Commission" meant a sentence under the guidelines.

Because ORS 137.717(1)(b) (1997) required the court to impose a sentence of "at least 13 months of incarceration," the parties and the court presumed that the departure provisions in ORS 137.717(3) (1997) were available only if the court were imposing a longer sentence than provided in ORS 137.717(1)(b) (1997)—in other words, the parties and the court effectively viewed the sentences identified in the statute as mandatory minimum sentences and not as presumptive sentences. With that understanding in mind, the defendant argued that, under applicable guidelines rules, the trial court was permitted to sentence him to an 18-month term of incarceration only if it had found two aggravating factors. OAR 213-008-0005(3) ("Any sentence inconsistent with the provisions of this rule shall constitute an additional departure and shall require substantial and compelling reasons independent of the reasons given for the dispositional departure.").

The Court of Appeals agreed with the defendant. It stated that the phrase "authorized by the rules of the Oregon Criminal Justice Commission" "simply refers the court to the sentencing guidelines already in existence, with its own complete set of rules and interpretations." *Bagley*, 158 Or App at 595. The court held that a sentencing court imposing a sentence under ORS 137.717(3)(b) (1997) must "revert to the guidelines if they allow a sentence longer than that pre-scribed by subsection (1)" and that the 18-month sentence that the trial court imposed was unlawful in this particular case, because it did not comply with the felony sentencing guidelines rules that required the court to find two separate aggravating factors. *Id*. at 595-96.

Within weeks of the Court of Appeals deciding *Bagley*, the House Judiciary Committee noted that the Court of Appeals' interpretation of ORS 137.717 (1997) was incon-sistent with some committee members' views of how that statute should operate. Specifically, those committee mem-bers believed that the legislature had intended that the stat-ute would establish presumptive sentences and not manda-tory minimum sentences, and, thus, that it would allow for both upward and downward departures. House Committee on Judiciary, Criminal Legislative Assembly, Mar 2, 1999, Tape 62, Side A (comments of Legislative Counsel Lemman

confirming to Chairman Mannix that ORS 137.717 (1999) "was not a mandatory minimum sentence of 13-19 months" and that "[t]he legislature specifically allowed both upward and downward departures"). Mannix asked Lemman to "offer language to reestablish that legislative intent," and Lemman agreed to do so. *Id*.

Ultimately, ORS 137.717 (1997) was amended in 1999 to clarify that the sentences set out in paragraph (1)(b) were statutory presumptive sentences. It also added a second sentence to ORS 137.717(3)(b) (1997): "Unless the law or the rules of the Oregon Criminal Justice Commission allow for imposition of a longer sentence, the maximum departure allowed for a person sentenced under this subsection is double the presumptive sentence provided in subsection (1) of this section." That is, after the 1999 amendment, the maximum departure sentence for repeat property crimes was twice the statutory presumptive sentence (and not twice the guidelines presumptive sentence) unless the guidelines themselves or another statute allowed for a longer sentence. In other words, the effect of the amendment was to require that departure sentences conform to the requirements of the felony sentencing guidelines, except that, in certain circumstances, a sentence longer than that authorized by the guidelines would be permissible.[5] The statute did not preclude the sentencing court from reverting to the guidelines grid block when departing downward.

ORS 137.717 and its history show that the most plausible interpretation of the phrase "departure sentence authorized by the rules of the Oregon Criminal Justice Commission" is that the legislature intended for the

---

[5] That provision was necessary, because, at the time, the guidelines rules defined the term "presumptive sentence" as a presumptive grid block sentence, and, thus, the guidelines rules would not otherwise permit a sentence longer than twice the grid block presumptive sentence. After the legislature enacted the 1999 amendments to ORS 137.717, the Oregon Criminal Justice Commission amended the definition of "presumptive sentence" to include the sentence provided in ORS 137.717. OAR 213-003-0001(16) (defining "presumptive sentence" to mean grid block sentence or "the sentence otherwise established in ORS 137.717"). Notably, the legislature enacted ORS 137.719 only two years later, but the commission did not change the definition of "presumptive sentence" to include presumptive sentences under ORS 137.719. And, in any case, it almost goes without saying that any change in the rules after the enactment of a statute has no effect on the proper interpretation of the statute itself.

starting point for a downward departure sentence under ORS 137.717(4) to be the grid block presumptive sentence for the particular offense, with any departures from that starting point conforming to all the other guidelines rules, including any upper limits that the rules may require, unless a statute specifically provides otherwise.

The state also points to ORS 137.712 as supporting context, but that statute does not help the state either. That statute relates to ORS 137.700 and ORS 137.707, which impose mandatory minimum sentences (not presumptive sentences) for various enumerated offenses. ORS 137.712 provides exceptions to those mandatory minimums for some offenses, permitting downward departures in certain circumstances:

> "[T]he court may impose a sentence according to the rules of the Oregon Criminal Justice Commission that is less than the minimum sentence that otherwise may be required by ORS 137.700 or 137.707 if the court, on the record at sentencing, makes the findings set forth in subsection (2) of this section [(setting out specific findings required for the departure)] and finds that a substantial and compelling reason under the rules of the Oregon Criminal Justice Commission justifies the lesser sentence."

ORS 137.712(1). In other words, the legislature authorized a sentencing court to impose a guidelines sentence—"a sentence according to the rules of the Oregon Criminal Justice Commission"—if a substantial and compelling reason justifies the departure and the court makes certain additional findings.

The state asserts that that provision sets out a "binary choice": The court must either impose the mandatory minimum sentence or else it must impose "an ordinary guidelines sentence according to the guidelines rules." The state then argues that that demonstrates that, if the legislature had wanted to establish that a guidelines sentence is the only alternative to the presumptive sentence, it knew how to say as much. In contrast to that "binary choice," the state concludes, ORS 137.719(2) provides more flexible authority to impose a departure from the presumptive sentence as long as it makes the requisite findings.

The difference in wording between ORS 137.712 and ORS 137.719 does not suggest a "binary choice" in one instance but not in the other. ORS 137.712(1) permits the court to impose a downward departure from the mandatory minimum sentence—a sentence "less than the minimum" sentence—"according to the rules of the Oregon Criminal Justice Commission." The state acknowledges that the departure permitted in ORS 137.712(1) is a departure to an "ordinary guidelines sentence." The operative wording in ORS 137.712(1) is almost identical to the wording in ORS 137.719(2). ORS 137.712(1) differs only in providing expressly for only downward departures and in providing that any departure sentence be "*according to* the rules of the Oregon Criminal Justice Commission" in ORS 137.712, rather than "*authorized by*" the rules, as is used in ORS 137.719. (Emphases added.) The state does not explain why those minor differences in wording are significant and require a different interpretation of ORS 137.719, and we are not persuaded that they do.

We turn to the state's remaining argument, that the upward departure maximums in OAR 213-008-0003(2) do not apply to downward departures from a statutory presumptive sentence. OAR 213-008-0003(2) provides:

> "A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605."

The state argues that nothing in that rule places any constraint on downward departures. Moreover, the state argues, the first sentence can have no meaningful application in this case, because defendant's presumptive prison term is life without the possibility of parole, and the second sentence cannot apply either, because it employs a definite article—*the* sentence—and therefore must refer to the departure sentence discussed in the first sentence. From there, the state asserts that the rule's text shows that the legislature intended it only to establish an upper limit on upward departures and it thus would have no bearing on downward departures from statutory presumptive sentences. As we

shall explain, for reasons already given, the state's argument is unavailing.

As the state notes, because the legislature approved the sentencing guidelines, their interpretation requires discerning the legislature's intent, as with a statute. *State v. Dulfu*, 363 Or 647, 656, 426 P3d 641 (2018). Thus, when we interpret a sentencing guidelines rule, we apply the methodology for interpreting statutes set out in *Gaines*.

First, we observe that OAR 213-008-0003(2) concerns "durational departures," which can be upward or downward. Although the rule provides limits on upward departures, nothing in the text of the rule precludes its application to a downward departure under ORS 137.719(2).

Second, we observe that the wording of OAR 213-008-0003(2) today is identical to the wording of that rule in 2001. Then, as now, the phrase "durational departure" was defined as "a sentence which is inconsistent with the presumptive sentence as to a term of incarceration, term of supervised probation or number of sanction units which may be imposed as a condition of probation." OAR 213-003-0001(8) (2001). As we have already pointed out, in 2001, when the legislature enacted ORS 137.719, the felony sentencing guidelines rules defined "presumptive sentence" as a "sentence provided in a grid block for an offender * * * or the sentence otherwise established in ORS 137.717." OAR 213-003-0001(16) (2001). Therefore, in 2001, for purposes of ORS 137.719, the limits set out in OAR 213-008-0003(2) applied to upward departures from the presumptive grid block sentence. It follows that, when the legislature enacted ORS 137.719 in 2001, it would have understood that the limits on departures set out in OAR 213-008-0003(2) applied to departures from a grid block sentence and not to departures from the presumptive sentence provided for in ORS 137.719(1).

That understanding of OAR 213-008-0003(2) is consistent with our conclusion that the legislature intended that departure sentences under ORS 137.719(2), must conform to the felony sentencing guidelines, under which the sentencing grid block is the starting point for determining an appropriate sentence.

Finally, the state acknowledges that there is no help-ful legislature history, but it argues that canons of construc-tion support its interpretation of the statute. Specifically, the state argues that requiring a sentencing court to use the grid block presumptive sentence as a starting point for determining an appropriate sentence under ORS 137.719 cannot be what the legislature intended, because that would be an "absurd result." *See Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 522, 238 P3d 395 (2010) ("In the face of competing and not wholly implausible constructions of a statute, when one construction would lead to an absurd result and the other would not, we generally favor the latter, under the assumption that the legislature would not intend an absurd or impossible result."). The state argues that interpreting ORS 137.719(2) to require reversion to a guidelines presumptive sentence as a starting point for resentencing would be absurd or unreasonable, because the legislature clearly intended to impose an extremely severe punishment on repeat sexual offenders and applying all the guidelines rules would result in a "categorically different," much shorter sentence.

We disagree that the difference in outcomes is generally so stark as to be absurd. As this court noted in *Davidson I*, in concluding that a sentence of life without the possibility of parole is constitutionally disproportionate to defendant's offenses, most of the offenses that are punish-able under ORS 137.719 are significantly more serious, and would be subject to significantly lengthier terms of impris-onment under the guidelines, than the guidelines sentence for defendant's crimes:

> "[U]nlike felony public indecency, most of the other felony sex crimes that may result in the imposition of a true-life sentence under ORS 137.719 involve nonconsensual sex-ual contact or sexual exploitation of child victims. A con-siderable number of those felonies (including first- and second-degree rape, first-degree sexual abuse, unlawful sexual penetration, sodomy, and kidnapping) carry man-datory minimum sentences of at least 70 months imprison-ment. ORS 137.700(2). The remaining felonies are ranked under the Oregon Sentencing Guidelines between cat-egories 5 and 10, with the majority being in the higher ranges. Presumptive sentences in those ranges can vary

from between probation and 60 months' imprisonment for offenders with no criminal history, to between 15 and 130 months' imprisonment for offenders with extensive criminal histories."

360 Or at 388 (footnote omitted). The stark difference between the maximum guidelines sentence for defendant's crimes and the statutory presumptive sentence of life without the possibility of parole is precisely why this court concluded that the statutory presumptive sentence was unconstitutional. That does not make the imposition of a guidelines sentence absurd in this case.

　　To summarize, we are unconvinced by the state's argument that, under ORS 137.719, a sentencing court has authority to impose any sentence it deems appropriate, short of life without the possibility of parole, when it finds substantial and compelling reasons to depart from the statutory presumptive sentence. Based on our examination of the text and context of that statute, we conclude that, in ORS 137.719(2), the words "departure sentence" in the phrase "departure sentence authorized by the rules of the Oregon Criminal Justice Commission" refers to a departure from the presumptive sentence of life without the possibility of parole set out in ORS 137.719(1), but that the nonspecific reference to "the rules" in that phrase is to all of the felony sentencing guidelines rules, including the sentencing grid block and the rules placing limits on departures from grid block sentences. And that is so because, when the legislature enacted ORS 137.719 in 2001, it would have understood that, when those rules used the phrase "presumptive sentence," that phrase referred to a grid block presumptive sentence and not to the statutory presumptive sentence set out in ORS 137.719(1), and, thus, the legislature had to have intended that sentencing courts use the felony sentencing guidelines grid block and departure rules and limitations in determining an appropriate departure sentence. For those reasons, we conclude that the trial court was required to impose a sentence authorized by the felony sentencing guidelines, and it erred in failing to do so. On remand, therefore, the trial court must impose a sentence using the guidelines grid block as a starting point and departing from there based on findings of substantial and

compelling reasons, as permitted under the felony sentencing guidelines rules.[6]

The decision of the Court of Appeals is affirmed. The case is remanded to the circuit court for further proceedings.

---

[6] Any term of post-prison supervision that the trial court imposes also must conform to the requirements of the felony sentencing guidelines rules.