***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted February 11; reversed and remanded for resentencing,
otherwise affirmed June 29, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW A. FUDGE,
*Defendant-Appellant.*

Washington County Circuit Court
C152987CR; A174092

Beth L. Roberts, Judge.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Egan, Judge, and Kamins, Judge.

JAMES, P. J.

Reversed and remanded for resentencing; otherwise affirmed.

**JAMES, P. J.**

This is defendant's second appeal challenging his sentence after a jury found him guilty of first-degree sodomy (Count 1), ORS 163.405, and first-degree sexual abuse (Count 2), ORS 163.427. In defendant's first appeal, he assigned error to the trial court's imposition of a 300-month mandatory minimum sentence under ORS 137.700 on Count 1. *State v. Fudge* (*Fudge I*), 297 Or App 750, 443 P3d 1176, *rev den*, 365 Or 819 (2019). Among other things, defendant argued that under the *Rodriguez/Buck* factors, the sentence violated Article I, section 16, of the Oregon Constitution, given his profound intellectual disability and lack of criminal history. 347 Or 46, 58-67, 217 P3d 659 (2009).

While defendant's first appeal was pending, the Oregon Supreme Court decided *State v. Ryan*, 361 Or 602, 625-26, 396 P3d 867 (2017) (*Ryan I*) (concluding that the trial court erred in its consideration of the first factor under *Rodriguez/Buck* by "failing to consider evidence of defendant's intellectual disability when that evidence, if credited, would establish that the sentence would be arguably unconstitutional because it shows that defendant's age-specific intellectual capacity fell below the minimum responsibility for a child"). The court opined that intellectually disabled persons, "[b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses, *** do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." *Id*. at 618-19 (quoting *Atkins v. Virginia*, 536 US 304, 306-07, 122 S Ct 2242, 153 L Ed 2d 335 (2002) (internal quotation marks omitted)). In light of *Ryan I*, we remanded because it was not clear on the record made at the original sentencing that the court had considered the "constitutional implications" of defendant's intellectual disability. *Fudge I*, 297 Or App at 761.

After we remanded, the court reimposed the same 300-month mandatory minimum sentence. Now, in defendant's second appeal,[1] he contends that despite the trial

---

[1] Defendant also contends that the trial court erroneously instructed the jury that it could convict defendant based on a nonunanimous verdict and that the error requires reversal of his convictions. We reject that without discussion. *See State v. Flores-Ramos*, 367 Or 292, 294, 334, 478 P3d 515 (2020), and

court's express statement on remand that it *had* considered defendant's intellectual disability in the original sentencing and again on remand (after *Ryan I*), the trial court again failed to conduct a proper analysis. More specifically, defendant argues that the trial court's analysis at resentencing in this case is materially indistinguishable from the one that we rejected in *State v. Ryan*, 305 Or App 750, 752, 472 P3d 90 (2020) (*Ryan II*) (vacated and remanded for the trial court to reconsider for a third time its resentencing because "the evidence related to the [guilty except for insanity] GEI defense and competency to stand trial is relevant, but *** those standards do not fully consider the spectrum of intellectual disability and the potential that intellectual disability may reduce, while not eliminate, criminal culpability or blameworthiness").

The state responds that the sentencing court fully considered the evidence of defendant's intellectual disability—*i.e.*, it did not reject that evidence as either unproved, false, or irrelevant. Rather, it concluded that the record establishes that (1) defendant knew what he was doing when he committed the crime; (2) he subjectively knew it was wrong; (3) despite his intellectual disability, he had control over his criminal conduct but purposely chose not to conform his conduct to the requirements of the law; (4) the victim, given his young age and having been isolated from his family, was especially vulnerable; and, (5) as a result, imposition of the 300-month minimum sentence does not "shock the conscience of the public."

Whether a sentence is proportionate to the offense is a question of law. *Fudge I*, 297 Or App at 755. A trial court's findings of historical fact are binding if the record supports them. *Id.* After reviewing the parties' arguments, the record, and the relevant legal authorities, we agree with defendant that the court on resentencing failed to independently assess the mitigating factor of defendant's profound intellectual disability in assessing the degree of moral culpability. We further agree with the parties that

---

*State v. Kincheloe*, 367 Or 335, 478 P3d 507 (2020), *cert den*, ___ US ___ (No. 20-8126, 2021 WL 2519403) (June 21, 2021) (concluding that a nonunanimous-verdict instruction does not require a new trial when the jury returns unanimous verdicts).

the record in this case allows us to determine the question of proportionality and that there is no need to remand for additional development of the record. And, as we explain below, we conclude that the court's imposition of a 300-month mandatory sentence is unconstitutionally disproportionate as applied to this defendant.

To begin, the undisputed evidence in the record is that defendant's IQ has remained stable since elementary school and is at most 24 points below the cutoff for intellectual disability, and defendant's adaptive functioning composite score is that of an eight-year-old. The state does not dispute that defendant's impaired intellectual functioning is a mitigating circumstance that weighs heavily in the balance in determining whether or not the sentence is unconstitutionally disproportionate as applied to defendant. Additionally, during oral argument, the state acknowledged that defendant's conduct might be more accurately viewed, not as premeditated, but "opportunistic."

Defendant had no criminal history. Had he been a juvenile, rather than an adult *functioning* as an eight-year-old juvenile, facing sentencing for the same conviction, with no criminal history, he would have faced a 100-month sentence, even if he had been able to aid and assist and was not eligible for a GEI defense. *See* ORS 137.707(4)(a)(M) (providing 100-month sentence for first-degree sodomy for 15-, 16-, or 17-year-old offender); *see State v. J. C. N.-V.*, 359 Or 559, 586, 380 P3d 248 (2016) (noting that "the idea that children are morally undeveloped and, therefore, less criminally culpable, has long been a feature of Oregon law"). Here, defendant is not even operating at the mental age of a 12-year-old.[2]

In sum, defendant has a profound intellectual disability and the adaptive function of an eight-year-old; the same offense for more intellectually advanced youth offenders with no criminal history is 200 months less than the 300 months' mandatory sentence for defendant; and defendant has no prior uncharged criminal conduct and was deemed low risk for recidivism. We offer no opinion on what

---

[2] Under ORS 161.290(1), the minimum age for criminal responsibility is 12 years old.

a proportionate sentence would be, but we conclude that the imposition of a 300-month mandatory sentence as applied to defendant is unconstitutionally disproportionate under Article I, section 16.

Reversed and remanded for resentencing; otherwise affirmed.